IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

RAY D. STEVA,

        Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

No. C14-2075

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.   **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  **PRINCIPLES OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. **FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    **A.**   *Steva's Education and Employment Background* . . . . . . . . . . . . . 4
    **B.**   *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . 4
        *1.*   *Steva's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . 4
        *2.*   *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . 5
    **C.**   *Steva's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . 7

IV. **CONCLUSIONS OF LAW** . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    **A.**   *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . 12
    **B.**   *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . 15
        *1.*   *Dr. El Abiad's Opinions* . . . . . . . . . . . . . . . . . . . . 15
        *2.*   *Credibility Determination* . . . . . . . . . . . . . . . . . . . 17
        *3.*   *RFC Assessment* . . . . . . . . . . . . . . . . . . . . . . . . 23
        *4.*   *Hypothetical Question* . . . . . . . . . . . . . . . . . . . . . 25

V.   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VI.  **ORDER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Ray D. Steva, on November 13, 2014, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.[1] Steva asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Steva requests the Court to remand this matter for further proceedings.

# II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's

---

[1] On January 2, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015)

(" 'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (" 'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## III. FACTS

### A. Steva's Education and Employment Background

Steva was born in 1967. He is a high school graduate, and attended two years of community college, where he completed a program in aviation maintenance. In the past, Steva worked as a chipper and grinder at a casting company, and as a maintenance mechanic.

### B. Administrative Hearing Testimony

#### 1. Steva's Testimony

At the administrative hearing, Steva stated that he suffers from severe abdominal pain, irritable bowel syndrome, and vomiting. Steva's attorney asked Steva about the various medication he was prescribed for his impairments. Steva explained that he takes narcotic pain medication, medication for his esophagus, which is damaged due to the amount of times he vomits in a day, anti-anxiety medication, special dietary shakes because he can't eat solid food, and medication to help him sleep. Steva testified that as a result of all the medications he takes, in addition to his extreme pain, he also has difficulties with focus and concentration.

Steva and his attorney also discussed his functional limitations. Steva stated that he has problems sitting for prolonged periods. Specifically, Steva testified that "I constantly

got to move around and I know it's because of the swelling of the intestines, it's just inflamed so much, there's no comfortable spot."[2] Steva also indicated that he cannot lift most objects because it causes too much pain.

Steva's attorney ended his questioning of Steva with the following colloquy:

> Q: What's your life like now? What do you do?
> A: Nothing, it's just nothing. Zero, nothing.
> Q: How do you feel about yourself?
> A: Not very happy. I get bitter, I get angry, if I wasn't a Christian man I probably would have ate a bullet a couple years ago.
> Q: Think you're able to work anymore?
> A: No, there's just no way.
> Q: Tell the judge why.
> A: I just don't know how to even make it. Two, three days a week I don't even know how to make it to that many days a week.
> Q: What happens those days?
> A: I don't even leave the couch hardly, just to go back and forth to the restroom and maybe enough to get some fluid. . . .
> Q: And you have the vomiting episodes, are those daily?
> A: Yes.

(Administrative Record at 49-50.)

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Carma Mitchell with a hypothetical for an individual who is:

> limited to performing light work[.] . . . I want you to assume this worker requires a job environment, and I guess I'm going to say, is pretty much an indoor environment, now, this is one where it's hard to measure in feet but where the toilet facilities are readily available to the employee[.] . . . And then finally I'd like you to assume this worker can only do the most

---

[2] Administrative Record at 48.

> simple, routine, and repetitive type of work, work with no
> close attention to detail or use of any independent judgment on
> the job, and in addition I'd like you to assume this work
> requires an occupation where he can perform without having
> any contact with the general public.

(Administrative Record at 54-55.) The vocational expert testified that under such limitations, Steva could not perform his past relevant work, but could perform the following jobs: (1) office helper, (2) mail clerk, and (3) photocopy machine operator. The ALJ provided the vocational expert with a second hypothetical that was identical to the first hypothetical, except that the individual would be limited to performing sedentary work instead of light work. The vocational expert testified that under such limitations, Steva could perform the following jobs: (1) document preparer and (2) addresser.

Steva's attorney also questioned the vocational expert:

> Q: A person would be able to . . . sit for only 15 minutes
> at a time and then need to stand for 10 minutes. Would
> he be able to do light work?
>
> A: No, not if he -- sounds like he wouldn't be able to
> sustain work at a standing position if he needed to
> alternate and sit every 15 minutes after standing.
>
> Q: Okay, and if the person would need to take unscheduled
> work breaks every 30 to 60 minutes, from five to 10
> minutes, would that preclude competitive employment?
>
> A: Yes, it would.
>
> Q: And if the person would have to lie down or rest
> unpredictably during an eight hour work day every
> hour, would that preclude competitive employment?
>
> A: Yes, it would.
>
> Q: And if the person were to miss work more than four
> days per month would that preclude competitive
> employment?
>
> A: Yes, it would, in my experience.
>
> Q: And Dr. [El Abiad] seems to indicate that he would not
> be able to work an eight hour day or a 40 hour week.
> I assume that would preclude competitive employment.
>
> A: Yes.

Q: And if his ability to maintain attention and concentration because of pain or for other reasons would be such that he would up to -- between 10 and 20 percent of the workday he would be unable to maintain attention and concentration could he do these light unskilled jobs that you listed?

A: No.

Q: Okay. I assume if he were limited to occasionally lifting 10 pounds, and less than that on a frequent basis he couldn't do light work?

A: Correct.

(Administrative Record at 57-58.)

### C. Steva's Medical History

On October 24, 2011, at the request of Disability Determination Services ("DDS"), Steva met with Dr. John E. Williams, Ph.D., for a psychological assessment. Dr. Williams noted that Steva presented with a history of gastrointestinal problems, pain in his abdomen, and history of Behcet disease. Steva's primary problems included abdomen pain, irritable bowel syndrome, and complications associated with Behcet disease. More specifically, Dr. Williams noted that:

> [Steva] reported since he was 21 he had difficulties related to Behcet disease including developing lesions on his eyes and open sores all over his body. His last relapse was 5 years ago but he has been in remission since this time. In addition, he reported worsening abdominal pain for the past 4-5 years nearly every day. [Steva] stated he is unable to keep most food down, and has frequent nausea and vomiting and is limited to eating soft foods such as yogurt, mashed potatoes, malt-o-meal, and rice. Due to his change in eating habits, he reported losing 50-60 pounds over the past 5 years. . . . [Steva] stated his esophagus is scarred due to vomiting so often over the past few years. In addition, he reported periods of diarrhea and constipation. . . . [Steva] reported a poor sleep schedule and being tired most of the time. He typically sleeps approximately 2-3 hours per night in a chair due to abdominal pain but tends to be restless and in pain. . . . [Steva] reported

taking multiple medications; however, he reported he does not take them regularly. He stated he only takes his medication every 2 or 3 days to reduce the chance of becoming tolerant to the medication and to increase its effectiveness when he does take them.

(Administrative Record at 397.) Steva described his psychological make-up as "being in a 'sucky' mood most of the time, more easily frustrated, and irritable."[3] According to Steva, his mood improves when he does not feel physical pain. Steva also reported a loss of pleasure and low energy. Lastly, Dr. Williams noted that Steva had "suicidal ideations; however, he reported he would never act on them due to his religion."[4] Dr. Williams also reviewed Steva's activities of daily living:

[Steva] reports that during a typical day he attempts to sleep, help his neighbor or daughter, or try to relax due to abdominal pain. He stated his wife cooks, mows the lawn, and washes the laundry and dishes. [Steva] and his wife reported they argue and fight over household chores. . . . He stated he has no strength and is in too much pain to help with household chores and care for himself.

(Administrative Record at 398.) Upon examination, Dr. Williams diagnosed Steva with major depressive episode, recurrent episode. Dr. Williams opined that Steva "appears to be intact cognitively and demonstrated no significant difficulties related to the mental status examination. He was oriented with no signs of delusional processes. . . . His thought process was logical, and his short-term memory appeared mostly intact."[5] Dr. Williams also opined on Steva's functional abilities:

[Steva] appears capable of understanding and following instructions and procedures. He is somewhat able to maintain

---

[3] Administrative Record at 397.

[4] Administrative Record at 397.

[5] Id. at 399.

8

concentration and attention; he reported having abdominal pain significant portions of the time and has difficulty concentrating on tasks during these times. He appears to have sufficient ability to interact appropriately with most people but has frequent fights and arguments with his wife. He appears to be more irritable and defensive and may have difficulty handling stress due to the frequency of abdominal pain and lack of sleep.

(Administrative Record at 399.) Dr. Williams concluded that:

[Steva] appears to have an inability to sustain employment or work-related positions due to abdominal pain or fear he will not be close enough to a bathroom in the event of a breakout. Overall, [Steva] appears to be a high-functioning individual but may lack an ability to function normally in an employment setting due to frequent abdominal pain and gastrointestinal problems.

(Administrative Record at 399.)

On April 18, 2012, Steva met with Dr. Rami G. El Abiad, M.D., complaining of chronic abdominal pain and a history of Behcet's disease. Dr. El Abiad noted that Steva's pain "is generalized and moved within the abdomen to involve different areas, generally precipitated by eating certain foods[.]"[6] According to Steva, he gets episodes of severe abdominal pain lasting 2-7 days, with symptom free periods of 2-4 days in between. Dr. El Abiad noted that the pain was "crampy" and associated with nausea and vomiting. Steva also reported that he alternates between having diarrhea and constipation. Upon examination, Dr. El Abiad diagnosed Steva with chronic abdominal pain with nausea, vomiting, and alternating diarrhea and constipation.

On June 6, 2012, Dr. El Abiad referred Steva to Dr. Monica C. Sandu, M.D., for an assessment of possible Behcet's syndrome. Upon examination, Dr. Sandu determined that Steva had:

_____

[6] Administrative Record at 499.

a history of Behcet's diagnosed in 1999, manifesting at that time with oral, genital ulcers, and eye involvement. . . . Over the past few years he has not had any oral or genital ulcers, no pathergy, but he had prominent abdominal symptoms. The recent upper GI endoscopy showed esophageal inflammation with small vessel damage suggestive of Behcet's disease involvement. No other gastrointestinal tract lesions noticed on endoscopy.

(Administrative Record at 524.) Dr. Sandu concluded that active Behcet's disease was not present at that time.

On August 14, 2012, Steva met with Dr. El Abiad and Dr. Alison Platt, D.O., for abdominal pain. Upon examination, Dr. El Abiad and Dr. Platt diagnosed Steva with chronic abdominal pain. Dr. El Abiad and Dr. Platt opined that "[b]reath testing [was] positive for lactose intolerance but otherwise workup has been unremarkable. At this point it is likely that [Steva's] symptoms could be secondary to Behcet's disease so we would recommend proceeding with more aggressive treatment."[7] Dr. El Abiad and Dr. Platt prescribed prednisone and imuran as treatment. Steva returned to Dr. El Abiad and Dr. Platt in November 2012. Steva's symptoms improved with prednisone, and his prescription for that medication was renewed. In February 2013, Dr. El Abiad and Dr. Platt noted that Steva's abdominal pain improved with imuran. Dr. El Abiad and Dr. Platt increased Steva's dosage of imuran as treatment.

On April 23, 2013, at the request of Steva's attorney, Dr. El Abiad filled out a "Crohn's & Colitis Residual Functional Capacity Questionnaire" for Steva. Dr. El Abiad diagnosed Steva with Behcet's disease. Dr. El Abiad opined that Steva's prognosis was "guarded." Dr. El Abiad indentified the following symptoms for Steva: abdominal pain and cramping, vomiting, and fatigue. Dr. El Abiad indicated that Steva suffered from intermittent episodes of severe abdominal pain several times per month, lasting a "few"

---

[7] Administrative Record at 547.

days per episode. Dr. El Abiad determined that Steva's experience of pain would "often" to "frequently" interfere with his attention and concentration. Dr. El Abiad found that Steva was "incapable" of even low stress jobs. Dr. El Abiad opined that Steva was "barely functional" and had significant problems with lack of sleep. With regard to functional limitations, Dr. El Abiad determined that Steva: (1) could sit for 15 minutes at one time; (2) could stand for 10 minutes at one time; (3) could sit, stand, and walk for less than 2 hours in an eight-hour workday; (4) would need unscheduled access to a bathroom every 30 to 60 minutes, lasting 5 to 10 minutes in length, during a typical eight-hour workday; (5) would need to lie down and rest every hour during an eight-hour workday; (6) could occasionally lift less than 10 pounds; (7) could rarely twist, stoop, bend, or crouch; and (8) could never climb ladders or stairs. Lastly, Dr. El Abiad opined that Steva would miss four or more days of work per month due to his impairments or treatment for his impairments.

On May 28, 2013, Steva met with Dr. Bhavya Akhauri, M.D., regarding abdominal pain. Dr. Akhauri noted that Steva had a history of Behcet's syndrome. However, upon examination, Dr. Akhauri opined that it is "possible that [Steva's] abdominal pain is not due to Behcet's syndrome."[8] Dr. Akhauri indicated that Steva's abdominal pain could be caused by narcotic bowel syndrome or irritable bowel syndrome. Additionally, Dr. Akhauri hypothesized that Steva's chronic opiate use over the past four years "could easily cause dysmotility and even narcotic bowel syndrome, which can cause chronic abdominal pain. If possible it would be best to stop this."[9] Dr. Akhauri deferred to the

---

[8] Administrative Record at 629.

[9] *Id.*

Rheumatology Department "for establishing a diagnosis of vasculitis and considering further treatment for systemic Behcet's as needed."[10]

On September 18, 2013, Steva met with Dr. Jacob Ijdo, M.D., in the Rheumatology Department at the University of Iowa Hospitals and Clinics. Steva was last seen at the Rheumatology Department on August 14, 2012. Steva was suffering from chronic abdominal pain and was being treated with azathioprine and prednisone. Upon examination, Dr. Ijdo opined that Steva has a "history of Behcet's disease, currently on azathioprine 250 mg daily and high dose of prednisone, with uncontrolled recurrent abdominal symptoms. [His] GI symptoms [are] most probably secondary to vasculitis of Behcet's disease, however the concomitant GI diseases cannot be ruled out."[11] Dr. Ijdo offered no concrete diagnosis, and adjusted Steva's medication as treatment.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Steva is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014); *Young v. Astrue*, 702 F.3d 489, 490-91 (8th Cir. 2013). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

---

[10] *Id.*

[11] *Id.* at 655.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is

the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Steva had not engaged in substantial gainful activity since January 20, 2010. At the second step, the ALJ concluded from the medical evidence that Steva had the following severe impairments: Behcet's disease, irritable bowel syndrome, mood disorder, and anxiety disorder. At the third step, the ALJ found that Steva did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Steva's RFC as follows:

> [Steva] has the residual functional capacity to perform light work[.] . . . [He] can lift and carry 10 pounds frequently and 20 pounds occasionally. He can stand and walk for 6 hours in an 8-hour day and sit for up to 6 hours in an 8-hour day. [He] is restricted to an indoor work environment where a restroom is close and readily available. He is limited to simple, routine, and repetitive work. In addition, he requires a position that requires no close attention to detail or use of independent judgment on the job. [He] is limited to no contact with the public. While he is able to speak to the general public in passing his position should be one where he could perform all job tasks without any interaction with the public.

(Administrative Record at 14-15.) At the fourth step, the ALJ determined that Steva had no past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Steva could work at jobs that exist in

significant numbers in the national economy. Therefore, the ALJ concluded that Steva was not disabled.

### B. Objections Raised By Claimant

Steva argues that the ALJ erred in four respects. First, Steva argues that the ALJ failed to properly evaluate and weigh the opinions of his treating physician, Dr. El Abiad. Second, Steva argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Third, Steva argues that the ALJ's RFC assessment is flawed and not supported by substantial evidence in the record. Lastly, Steva argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

### 1. Dr. El Abiad's Opinions

Steva argues that the ALJ failed to properly evaluate the opinions of his treating physician, Dr. El Abiad. Specifically, Steva argues that the ALJ failed to properly weigh Dr. El Abiad's opinions. Steva also argues that the ALJ's reasons for discounting Dr. El Abiad's opinions are not supported by substantial evidence in the record. Steva concludes that this matter should be remanded for further consideration of Dr. El Abiad's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's

statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id..*); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(c)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear

to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In his decision, the ALJ addressed the opinions of Dr. El Abiad as follows:

> Dr. Rami El Abiad from the University of Iowa opined [Steva] would miss more than four days a month due to his condition and could sit less than 2 hours a day, and only 15 minutes consecutively (Exhibit 14F). This is patently inaccurate since [Steva] sat a least twice that long during the hearing. Dr. Abiad also noted [Steva] could never climb stairs. These extreme opinions are inconsistent with the physician[']s own clinical notes that made no such reference to observations or behavior that would support these limitations. In addition, the opinion is inconsistent with objective evidence above, and [Steva's] level of daily activities. Therefore, I afford the opinion little weight.

(Administrative Record at 20.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. El Abiad. The Court also finds that the ALJ provided "good reasons" for affording only "little" weight to Dr. El Abiad's opinions. *See* 20 C.F.R. § 404.1527(c)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2.   *Credibility Determination*

Steva argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Steva maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Steva's testimony, and properly evaluated the credibility of his subjective complaints.

17

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb

the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ addressed Steva's subjective allegations as follows:

> After careful consideration of the evidence, I find that [Steva's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Steva's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> Initially, I note the objective evidence does not support the degree of limitation alleged by [Steva]. X-rays of the abdomen were unremarkable and CT-scans of the abdomen were essentially normal (Exhibit 2F). During his hospital stay for abdominal pain, his examination revealed no lesions or trigger points in the rectus quadrants (Exhibit 2F). In addition, the consultation with his rheumatologist in June 2012 revealed a normal physical examination and normal urinalysis (Exhibit 8F/3). Information in [Steva's] mental status examination revealed [Steva] was oriented and social judgment was intact. [Steva's] mood was appropriate but sometimes irritable. Attention and concentration were adequate and thought processes were logical. No delusions were noted (Exhibit 4F/5). . . .

[Steva] had a good work history at Iowa Laser Tech (Exhibit 5D), which normally adds to credibility. However, I find other factors outweigh this factor. During his consultative examination [Steva] told the physician, his position ended due to downsizing and his hospitalizations. The fact that the company downsized indicates there were reasons other than [Steva's] health that prevented him from working (Exhibit 4F/3).

Further, following his termination at Laser Tech [Steva] received unemployment compensation. To receive unemployment benefits [Steva] has indicated to the state of Iowa that he is ready, able and willing to work (Exhibit 6D). In addition, although [he] had not worked at Laser Tech since 2010 he continues to work odd jobs as they are offered, does mechanic maintenance on his truck and performed mechanic work at Steve's Farms (Exhibit 13F/26, 28). Moreover, while he states he has not been able to work recently he retains his federal aviation license (Exhibit 12F/10).

[Steva] also alleges that he has Behcet's disease and complains of major abdominal pain (Exhibit 12F/7). However, the record states that he has had no ulcers for years and no active Behcet's (Exhibit 12F/8). Information in the record did however reveal that he was lactose intolerant, which could have contributed to some abdominal pain issues (Exhibit 12F/34). Moreover, while [Steva] may have some issues with pain, information in the record reveals [he] tends to overstate his pain (Exhibit 2F/1), and pain is "out of proportion" with objective medical findings (Exhibit 3F/9). [Steva] has also exhibited signs of being drug seeking which does not add to credibility. Further, the record shows that [he] does not take medication as ordered (Exhibit 4F/4), but becomes angry when physicians will not prescribe narcotics (Exhibit 3F/4). Specifically, in an emergency room visit dated June 20, 2012, the physician told [Steva] that long-term treatment with narcotic pain medication was likely worsening his symptoms, but in spite of that, he continued to demand another prescription for dilaudid. However, the physician denied the

request (Exhibit 12F/18). Another time [he] became angry with his physician when he would not prescribe narcotics stating he had the potential for a high paying job but could not perform the job without the pain medication. During the visit, both [Steva] and [his] wife left the room in anger. [Steva's] spouse did call back however asking the physician to reconsider prescribing the medication. The physician noted this was not possible especially in light of [Steva's] benign examination (Exhibit 2F/37). I find [Steva's] objective examinations are out of proportion with his ongoing requests for pain medication, and weigh against credibility.

Further, at his consultative examination, [Steva] made numerous inaccurate statements (Exhibit 4F). Specifically, he told the examiner he had "anal leakage" which sounds bad but there is no mention of the problem in the medical records. He also indicated he needed a knee replacement, but again no mention of knee problems, or replacement. Finally, [Steva] became very dramatic and said he engaged in self-mutilating behaviors when his medication failed to relieve pain. Again, I find this unhealthy and bothersome, but again there is no hint of that behavior in the medical records. These inconsistencies add further proof that [Steva] overstates his symptoms.

At the hearing, [Steva] testified that he does "zero" nothing, and rarely leaves the couch. He also stated he had to have a bucket by him to catch his vomit. However, the record does not reflect that the claimant has lost weight over time even though he attempted to give the impression at the hearing that he rarely ate and vomited repeatedly. In addition, his testimony is inconsistent with his detailed function report, which never mentioned vomiting (Exhibit 9E). [Steva's] statement that he does nothing is also inconsistent with information in the record that shows he continued to work part time as a mechanic. The record also notes the claimant takes daily walks (Exhibit 6F/13), and was told by his physician to walk and work in the garage, indicating that light activity is something he is able to do (Exhibit 13F/33). . . .

Further, no one mentioned that he relied on a bucket near his chair although he testified he kept a bucket nearby for that purpose, which casts doubt on [Steva's] testimony. [Steva's] spouse also added statements regarding [his] activities from Sunday May 5th through Tuesday May 7th. While she noted some problems with nausea, she never stated [he] vomited. . . .

I have also considered [Steva's] level of daily activities in determining his alleged disability. While I find [he] may have some limitations due to his subjective complaints, his ability to care for his personal needs, perform some household duties, socialize with friends and family, shop and perform mechanic work shows that he is not near as functionally limited as alleged.

(Administrative Record at 18-20.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Steva's treatment history, medical history, functional restrictions, work history, activities of daily living, and use of medications in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Steva's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Steva's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue,

the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. *RFC Assessment*

Steva argues that the ALJ's RFC assessment is flawed. Specifically, Steva argues that the ALJ's RFC assessment is incomplete because it does not properly account for all of his impairments and functional limitations. Steva also argues that the ALJ's RFC assessment is not supported by substantial evidence in the record. Steva maintains that this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an

administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In his decision, the ALJ determined that the RFC assessment "is supported by the medical evidence of record, the State agency findings, the record as a whole and [Steva's] testimony."[12] More specifically, in determining Steva's RFC, the ALJ thoroughly addressed and considered all of Steva's medical history and treatment for his complaints.[13] The ALJ also properly considered and thoroughly discussed Steva's subjective allegations of disability in making his overall disability determination, including determining Steva's RFC.[14]

Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Steva's medical records, observations of treating physicians, and Steva's own description of his limitations in making the ALJ's RFC assessment for Steva.[15] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based

---

[12] Administrative Record at 21.

[13] *See* Administrative Record at 15-17 (providing a thorough discussion of Steva's overall medical history and treatment).

[14] *Id.* at 18-20 (providing a thorough discussion of Steva's subjective allegations of disability).

[15] *Id.* at 15-21 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Steva's assertion that the ALJ's RFC assessment is flawed is without merit.

### 4. *Hypothetical Question*

Steva argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of his impairments. Steva also argues that the ALJ's hypothetical did not contemplate all of his functional limitations. Steva maintains that this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Steva's testimony in determining Steva's impairments and functional limitations.[16] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a

---

[16] *See* Administrative Record at 15-21.

whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

## V. CONCLUSION

The Court finds that the ALJ properly considered and weighed the opinions of Dr. El Abiad. The Court also finds that the ALJ properly determined Steva's credibility with regard to his subjective complaints of disability and pain. Furthermore, the Court finds that the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Lastly, the ALJ's hypothetical question to the vocational expert properly included those impairments and functional limitations substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1.  The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.  Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3.  The Clerk of Court is directed to enter judgment accordingly.

DATED this 21st day of August, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA